IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————————

THE STATE OF ARIZONA,
*Petitioner,*

*v.*

HON. THOMAS FINK, JUDGE OF THE SUPERIOR COURT OF THE STATE OF
ARIZONA, IN AND FOR THE COUNTY OF SANTA CRUZ,
*Respondent,*

*and*

GEORGE ALAN KELLY,
*Real Party in Interest.*

No. 2 CA-SA 2023-0071
Filed November 7, 2023

———————————————

Special Action Proceeding
Santa Cruz County Cause No. S1200CR202300026

**JURISDICTION ACCEPTED; RELIEF GRANTED**

———————————————

COUNSEL

George E. Silva, Santa Cruz County Attorney
By Kimberly J. Hunley, Chief Deputy County Attorney, Nogales
*Counsel for Petitioner*

Brenna Larkin, Tumacacori
*Counsel for Real Party in Interest*

Brian M. McIntyre, Cochise County Attorney
By Michael A. Powell, Deputy County Attorney, Bisbee
*Counsel for Amicus Curiae*

## OPINION

Vice Chief Judge Staring authored the opinion of the Court, in which Judge Sklar and Judge O'Neil concurred.

S T A R I N G, Vice Chief Judge:

**¶1**     The state seeks special action review of the respondent judge's determination that the exception to the anti-marital fact privilege under A.R.S. § 13-4062(1)(a) ends upon a defendant's arrest. Under the respondent's interpretation, the privilege could be reasserted post-arrest, notwithstanding the fact the testifying spouse has made a voluntary statement to an investigating law enforcement officer.[1] Because the state has no remedy by appeal and the issue presented involves potentially privileged information, we accept special action jurisdiction. *See* Ariz. R. P. Spec. Act. 1(a); *Arpaio v. Figueroa*, 229 Ariz. 444, ¶ 5 (App. 2012). And because the respondent erroneously drew a distinction not contained in the statute by determining the anti-marital fact privilege can be reasserted after arrest, we grant relief.

### Factual and Procedural Background

**¶2**     On January 30, 2023, real party in interest, George Kelly, allegedly fired his rifle at a purported group of migrants on his ranch, killing one of them. The state charged Kelly with second-degree murder and aggravated assault.

**¶3**     Later that day, Santa Cruz County Sheriff's Office detectives investigating the shooting interviewed Kelly's wife, Wanda. Among other things, she told the detectives that she and her husband had seen people with backpacks and guns on their property that day, that Kelly had told her to be quiet and had gone outside after seeing the people, that she had hidden in the house, that Kelly had "usually" fired warning shots when people were on the property in similar circumstances, and that she had heard at least one shot earlier that day. When detectives informed Wanda

---

[1]The state also asserts the respondent judge erred by precluding text messages sent and received by the defendant. We address that issue in a separate memorandum decision. *See* Ariz. R. Sup. Ct. 111(h).

a dead body with a gunshot wound had been found on the property, she stated: "Well, if you knew the things that been goin' on out there, you would have—you wouldn't be waitin' around."

¶4        Wanda later appeared for a deposition and answered questions about what she had seen and heard on January 30. She testified about some statements Kelly had made but refused to answer questions about what Kelly had later told her about what happened on the day of the incident. Kelly's counsel objected to the questions, asserting the couple's conversations were privileged.

¶5        The state then requested the respondent judge rule that the anti-marital fact privilege did not apply and that, in any event, Wanda had waived any marital privilege by testifying about some of Kelly's statements but not others. The respondent declined to reach the latter question, limiting his analysis to the applicability of the anti-marital fact privilege. He concluded that the privilege did not apply to any pre-arrest conversations between Wanda and Kelly because she had voluntarily discussed the incident with law enforcement officers. He also concluded that any post-arrest conversations remained privileged. Acknowledging he was not aware of any authority drawing the same distinction, he reasoned that, once a defendant has been "arrested and charged," the defendant's "5th and 6th Amendment [r]ights apply," thus "terminat[ing] the scope of the exception of the marital privilege." This petition for special action followed.[2]

**Discussion**

¶6        The anti-marital fact privilege generally prohibits spousal testimony in criminal cases without the defendant's consent about events or communication occurring during the marriage. § 13-4062(1). We review issues of statutory interpretation de novo. *State v. Hernandez*, 246 Ariz. 407, ¶¶ 8 (App. 2019). "When the statute's plain language is clear, we will not resort to other methods of statutory interpretation, 'such as the context of the statute, its historical background, its effects and consequences, and the spirit and purpose of the law.'" *Id.* ¶ 12 (quoting *State v. Gray*, 227 Ariz. 424, ¶ 5 (App. 2011)). Relevant here, the privilege does not apply when the defendant is accused of certain crimes, including second-degree murder,

_____

[2]It was unclear from the record whether the state was seeking communications Kelly had with his attorney. At oral argument, however, the state informed us it is not seeking any attorney-client communication.

with which Kelly has been charged, if the testifying spouse made "a voluntary statement to a law enforcement officer during an investigation of the offense or offenses about the events that gave rise to the prosecution or about any statements made to the spouse by the other spouse about those events." § 13-4062(1)(a); A.R.S. § 13-706(F)(1)(b).

¶7        The state contends the respondent judge erred by concluding the privilege applied to post-arrest conversations despite Wanda's voluntary statements to the detectives. We agree. The statutory language is unambiguous—once Wanda made the statements about the events of January 30, the marital privilege no longer applied to "events occurring during the marriage" or "communication[s] made by one to the other during the marriage." § 13-4062(1)(a). The statute does not contemplate that the privilege may again become applicable based on later events, including a defendant's arrest. To the contrary, the statute expressly provides that the privilege does not apply, and a spouse may thus be called to testify "in a prosecution," based on a statement to law enforcement made "during an investigation." *Id.* And, like the respondent judge, we are not aware of any authority supporting the conclusion that Kelly's constitutional rights expand the spousal privilege beyond its statutory limits. The anti-marital fact privilege is statutory and does not implicate any constitutional right. *See State v. Watkins*, 126 Ariz. 293, 298 (1980).

¶8        Kelly nonetheless asserts § 13-4062(1)(a) is ambiguous because it "does not define the limit of the examination . . . that is permitted" and "is silent on the question of when the privilege comes back." Because of this purported ambiguity, he reasons, we must apply the rule of lenity and interpret the statute favorably to him. However, even assuming the rule of lenity applies to Arizona criminal statutes, *see* A.R.S. § 13-104, it does not aid Kelly in this instance.

¶9        A statute is ambiguous when a court can reasonably interpret it in more than one way. *Glazer v. State*, 244 Ariz. 612, ¶ 12 (2018). That is not the case here, and, absent ambiguity, the rule of lenity does not apply. We apply that rule only when a statute is ambiguous and all other methods of statutory construction have failed. *State v. Bon*, 236 Ariz. 249, ¶ 13 (App. 2014). The mere fact a statute is silent as to a particular scenario neither makes it ambiguous nor permits us to read provisions into it. *See Patches v. Indus. Comm'n*, 220 Ariz. 179, ¶ 10 (App. 2009); *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965) ("[A] court will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions."). That § 13-4062(1)(a) does not limit the scope of an examination or provide for

reinstatement of the privilege, therefore, does not allow us to create those limits ourselves.

## Disposition

**¶10** We accept jurisdiction and, because the respondent judge erred by concluding the anti-marital fact privilege applied to Kelly's post-arrest conversations with Wanda, we grant relief. We vacate the respondent judge's order denying the state's motion to complete Wanda's deposition.